IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AN NGUYEN, | : |
| Plaintiff, | : |
| VS. | : NO. 5:22-CV-00379-MTT-CHW |
| DEPUTY WARDEN GRAHAM, *et al.*, | : |
| Defendants. | : |

### ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff An Nguyen, an inmate currently confined at the Valdosta State Prison in Valdosta, Georgia, has paid the required filing fee in this action. The claims in Plaintiff's Complaint (ECF No. 1) are now ripe for review pursuant to 28 U.S.C. § 1915A. Upon review, Plaintiff's due process claims against Defendants Graham, Morrison, and Beasley and his equal protection claim against Defendant Graham may proceed for further factual development, and it is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I. <u>Standard of Review</u>

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). When conducting

preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II. Factual Allegations

Plaintiff's claims arise from his confinement at the Dooly and Valdosta State Prisons beginning on July 5, 2022. Compl. 5, ECF No. 1. On that date, CERT team officers at Dooly State Prison approached Plaintiff and ordered him to "pack [his] property" because "they had to lock [him] up." *Id.* When Plaintiff questioned the officers, they told Plaintiff that Plaintiff had been viewed "in a video on Tik Tok that went viral" and "was posted on a page called 'Chinese Money.'" *Id.* The video featured an inmate who had started a fire underneath the metal, grated stairs at the prison and was grilling food on the grate. Plaintiff denied participating in the video and informed the officers that he was Vietnamese, not Chinese. *Id.* Plaintiff was nevertheless confined in segregation at Dooly State Prison until July 7, 2022, when he was transferred to Valdosta State Prison and placed on administrative segregation in the Tier II program. Attach. 1 to Compl. 1, ECF No. 1-1. Plaintiff was later issued a disciplinary report, found guilty of an infraction, and given 280 days of store, phone, and property restrictions. *Id.* at 13. Plaintiff contends that another

3

inmate was also punished for starting the fire and that Defendant Morrison, the Tier II unit manager at VSP, acknowledged that she knew Plaintiff had not started the fire. *Id.* at 2, 7-8.

Plaintiff contends prison officials' course of action violated his constitutional rights, in that he did not receive due process before being placed on Tier II and in connection with his disciplinary report hearing. Attach. 1 to Compl. 2-3, ECF No. 1-1. He further contends that Defendants discriminated against him because he is Vietnamese. *Id.* at 5-6. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, a jury trial, costs, and "any additional relief this Court deems just, proper, and equitable." *Id.* at 15. Plaintiff also seeks an order "forbid[ding] the Defendants from deleting the video that placed [him] on the Tier II program." *Id.*

### III. Plaintiff's Claims

#### A. Procedural Due Process Claims

Plaintiff contends that he did not receive the proper procedural precautions when he was assigned to Tier II administrative segregation and during the hearing on his disciplinary report. These claims could implicate an inmate's right under the Due Process Clause of the Fourteenth Amendment, which protects against deprivations of "life, liberty, or property without the due process of law." U.S. Const. amend. XIV. In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process. *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

"Whether an inmate has a protected liberty interest that would entitle him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have already been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (emphasis in original)).  The Supreme Court has therefore "made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required." *Bass*, 170 F.3d at 1318.  First, a prisoner is entitled to due process "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Jacoby*, 835 F.3d at 1346 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (alterations in original)).  Second, a prisoner is entitled to due process if a change in the prisoner's conditions of confinement "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.*

Plaintiff's allegations do not indicate that Defendants took any sort of action that unexpectedly altered the terms of his imprisonment, such as revocation of good time credit. *See, e.g., Smith v. Deemer*, 641 F. App'x 866, 867 (11th Cir. 2016) (per curiam) ("A hallmark example of action that unexpectedly alters an inmate's term of imprisonment is the revocation of good-time credit.").  Accordingly, Plaintiff must demonstrate that the denial of due process caused him to suffer an "atypical and significant hardship." *Sandin*, 515 U.S. at 483.  A prisoner can demonstrate that he suffered an "atypical and significant hardship" implicating his protected liberty interests if the more restrictive conditions to which he is subjected in segregation "are particularly harsh compared to ordinary prison

5

life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam).

### 1. Tier II Assignment

Plaintiff first alleges that he was not provided due process when he was initially assigned to Tier II. Plaintiff has alleged at least some facts that would show the conditions on Tier II were particularly harsh or "present[ed] a dramatic departure from the basic conditions" of his sentence. *Compare Sandin*, 515 U.S. at 476, 485 (placement in segregation for term of thirty days did not give rise to protected liberty interest) *with Wallace v. Hamrick*, 229 F. App'x 827, 830-31 (11th Cir. 2007) (per curiam) (placement in administrative segregation for 28 days without hot water, adequate ventilation, or opportunity to exercise while awaiting disciplinary hearing supported due process claim because conditions may have constituted "an atypical and significant hardship 'in relation to the ordinary incidents of prison life'"). Plaintiff will be confined to Tier II for at least ten months, and he is subject to "visitation restrictions, store restrictions, property restrictions" and package restrictions while he is on Tier II. Attach. 1 to Compl. 13, ECF No. 1-1. He also states that he is required to be handcuffed "everywhere" he goes, he is "only allowed 3 brief showers a week," and he has "very limited space and time during rec." *Id.* at 10. For purposes of preliminary screening, Plaintiff has set forth a protected liberty interest within the meaning of *Sandin*.

Plaintiff has also alleged facts sufficient to show, at this early stage, that he did not receive adequate procedural due process when he was initially housed in Tier II. The decision to place an inmate in administrative segregation pending completion of an

investigation into disciplinary charges against him or because he is a security threat requires "an informal, nonadversary evidentiary review." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983) *abrogated on other grounds by Sandin*, 515 U.S. at 482-83. The "inmate must merely receive notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* This "proceeding must occur within a reasonable time following an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials." *Id.* at n.8. "So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.*

The facts of this case are similar those in *Quintanilla v. Bryson*, 730 F. App'x 738 (11th Cir. 2018) (per curiam). In *Quintanilla*, the plaintiff alleged that a fight broke out between black and Hispanic prisoners in his dormitory at Wheeler State Prison. *Id.* at 741. The plaintiff contended he was not involved in the fight and that video footage would confirm this contention. *Id.* But "prison officials placed him in segregation, anyway, without first serving him with a disciplinary report alleging a violation of any prison rules." *Id.* In addition, prison officials told the plaintiff "'that he had to be moved because he was Hispanic.'" *Id.* The plaintiff was transferred to Smith State Prison, where prison officials immediately placed him on Tier II. *Id.* The plaintiff did not receive an initial assignment hearing within 96 hours, per Georgia Department of Corrections policy, "nor did he receive any information about the reasons for his placement" for another ten days. *Id.* At that time, he received a Tier II assignment memo and a Tier II assignment appeal form stating

that he had been assigned to Tier II because of his involvement in the disturbance at Wheeler. *Id.* The plaintiff appealed, but his appeals were denied simply because he had "'met the criteria for Tier II.'" *Id.*

During its preliminary screening of the case, the district court dismissed the plaintiff's claims that he was denied procedural due process with respect to his initial placement in administrative segregation. The Eleventh Circuit reversed, finding that Plaintiff had stated an actionable claim by alleging that (1) he did not receive a hearing when he was initially placed on Tier II; (2) he had not been charged with or found guilty of any misconduct when he was initially placed on Tier II; (3) he was told his initial transfer was because he was Hispanic; and (4) when he appealed his placement, "the committee did not address his claims of innocence or explain its decision beyond stating that he 'met criteria for Tier II.'" *Quintanilla*, 730 F. App'x at 745.

Like the plaintiff in *Quintanilla*, Plaintiff in this case alleges that he was not involved in the July 4th video incident (as confirmed by video evidence) and that he was initially placed in segregation just because he was Asian. Plaintiff also states that he was never served with a disciplinary report accusing him of wrongdoing, did not have an initial placement hearing, and did not receive written notice of the reasons for his confinement for more than ten days. *See Santana v. Keane*, 949 F.2d 584, 585 (2d Cir. 1991) (per curiam) (five-day delay in providing hearing after prisoner placed on keeplock status sufficient to state due process claim at motion to dismiss stage). Finally, Plaintiff claims that prison officials refused to address his claims of innocence and did not provide any explanation for their decision to keep him in segregation other than stating he met the

criteria for Tier II placement. *See* Attach. 3 to Exhs. to Compl. 1, ECF No. 5-3. At this very early stage in the litigation, and in light of the *Quintanilla* case, Plaintiff's claims based on his initial assignment to Tier II are sufficient to proceed for further factual development against Defendants Graham, Beasley, and Morrison.[1]

### 2. Disciplinary Report

Plaintiff also contends he was deprived of due process in connection with his disciplinary report proceeding. More specifically, he contends he "never received a disciplinary report explaining the basis of the allegations against [him]" prior to the August 5, 2022 disciplinary hearing. Attach. 1 to Compl. 1-2, ECF No. 1-1. In addition, Plaintiff states that he was not permitted to call as a witness the DSP prison official who allegedly served Plaintiff with the disciplinary report on July 6, 2022. *Id.* at 2-3. It appears from Plaintiff's allegations that the disciplinary report proceedings were entirely separate from the decision to place Plaintiff on Tier II, given that Plaintiff was transferred to Tier II approximately a month before his disciplinary hearing.

---

[1] There is a significant difference between this case and *Quintanilla*—namely, that in this case Plaintiff's Tier II assignment appeal form indicates that he also failed a drug test given to him upon his arrival at VSP. Attach. 3 to Exhs. to Compl. 1, ECF No. 5-3 ("ON 07/07/2022 OFFENDER NGUYEN GDC#963798 WAS GIVEN A DRUG TEST USING THE 6 PANEL -DIP REDITEST" and "TESTED POSITIVE FOR AMPHETAMINE AND METHAMPHETAMINE DR#927276"). Plaintiff omits this fact from his narrative, and the documents provided by Plaintiff suggest that he did not contest this finding. *See id.* Because the appeal denial simply states that "Offender Nguyen has met criteria for TIER II placement and will remain," it is unclear what effect—if any—the failed drug test had on Plaintiff's placement decision. *Id.* Moreover, even if Plaintiff "ultimately belonged" on Tier II, that fact "is irrelevant to the question of whether he received due process on his way there." *Layton v. Beyer*, 953 F.2d 839, 847 (3d Cir. 1992). Further factual development is therefore necessary.

Plaintiff's claims that he was not afforded due process in connection with his disciplinary report are subject to dismissal for at least two reasons. First, Plaintiff has not shown that he had a protected liberty interest that would have entitled to him to due process protections. As a result of the disciplinary report, Plaintiff was given 280 days of store, phone, and property restrictions. Attach. 1 to Compl. 13, ECF No. 1-1. Restrictions on privileges, "though concededly punitive," do not generally "present a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence." *Sandin*, 515 U.S. at 485. Plaintiff has not pleaded sufficient facts to permit the Court to conclude that these restrictions were harsh enough to amount to the deprivation of a constitutional liberty interest that entitled him to due process at a disciplinary hearing. *See, e.g., Smith v. Deemer*, 641 F. App'x 865, 867-68 (11th Cir. 2016) (per curiam) (applying "liberty-interest analysis prescribed by *Sandin*" and holding that sanctions which included fifteen to thirty days of deprivation of private property, limited out-of-cell time, and restricted library, phone, and television access were not severe enough to implicate a liberty interest protected by the Due Process Clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (loss of privileges that included nine-month package restriction did not impose atypical and significant hardship); *Jimenez v. Carr*, No. 2:12-CV-342-TMH, 2014 WL 1765941, at *2 (M.D. Ala. May 2, 2014) ("Jimenez's loss of privileges for 120 days is neither 'atypical' nor a 'significant hardship' under the *Sandin* analysis."); *Butler v. Underwood*, No. 5:12-CV-1 (MTT), 2012 WL 1932951, at *2-3 (M.D. Ga. Apr. 25, 2012) (prisoner who received ninety days each of telephone restriction, store restriction, package restriction, and impoundment of personal property as a result of disciplinary violation did not state a

10

cognizable due process claim); *Joyner v. Ozmint*, C/A No. 3:09-CV-2524-DCN-JRM, 2010 WL 3783167, at *4 (D.S.C. Sept. 22, 2010) (noting that "loss of canteen, visitation, and phone privileges for one year" would not implicate due process concerns), *aff'd* 425 F. App'x 223 (4th Cir. 2011); *see also Lewis v. Dretke*, No. 02-40856, 2002 WL 31845293, at *1 (5th Cir. Dec. 11, 2002) (per curiam) (restrictions on commissary and phone privileges resulting from allegedly false disciplinary charges do not implicate due process). Because Plaintiff has failed to plead an essential element of his disciplinary report due process claim, that claim should be dismissed.

In addition, Plaintiff contends that the "disciplinary prosecutor" and the "advocate" at Valdosta State Prison are responsible for the alleged denial of due process during the disciplinary report hearing. Compl. 1, ECF No. 1.[2] Plaintiff, however, does not know the names of those individuals and has only identified them as "Doe" defendants. Generally, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The only exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)). To proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted).

---

[2] Plaintiff does not clearly allege that any other named Defendant actively participated in the disciplinary hearing and therefore could have caused a violation of his due process rights during that hearing.

Plaintiff has not identified the disciplinary prosecutor or the disciplinary report advocate involved in this incident beyond identifying those individuals' roles. Compl. 5, ECF No. 1. While discovery may reveal the true names of those individuals in this case, and this is a "relevant consideration when determining whether a plaintiff can pursue a claim against an unnamed defendant[,]" it is not sufficient absent some way of identifying these Defendants for service. *Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (per curiam) (observing that "our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity" instead requiring "an unambiguous description of a defendant that enables service of process"); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (declining to address claims against "John Doe Deputies" because they were "not proper parties" in the action); *Richardson*, 598 F.3d at 738 (plaintiff's description of "John Doe (Unknown Legal Name, Guard, Charlotte Correctional Institution" was "insufficient to identify the defendant among the many guards employed at CCI"). Plaintiff's disciplinary hearing due process claims are therefore also subject to dismissal on this ground.

B.   *Equal Protection Claims*

In his equal protection claims, Plaintiff contends that Defendants discriminated against him on the basis of race when they immediately placed him in segregation when they discovered the Tik Tok video. Plaintiff states that he was told by CERT team officers at DSP that "administration" ordered them to place Plaintiff in lockdown because "the video was posted on a page called 'Chinese Money'" and "[a]dministration said [Plaintiff]

12

had to be locked up because [he was] Chinese Money." Compl. 5, ECF No. 1. Plaintiff tried to explain that he was Vietnamese, not Chinese, to no avail. *Id.*

It is well-established that "[u]nder the Equal Protection Clause, prisoners have a right to be free from racial discrimination." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995). If "administration" made the decision to lock down Plaintiff simply because he was the only inmate of Asian descent in the unit where the fire was started, despite evidence that Plaintiff was not actually the inmate starting the fire, his equal protection claim may not be necessarily frivolous. Though it is a close call, Plaintiff will be permitted to proceed on this claim against Defendant Graham, the only member of "administration" at DSP named in this lawsuit. Because Plaintiff has not alleged any facts suggesting that the remaining Defendants based their decisions regarding his confinement on race, he has failed to state an equal protection claim against those Defendants and any such claims should be dismissed.

### C. Claims for Preliminary Injunctive Relief

Plaintiff appears to request preliminary injunctive relief in this case, seeking his release from Tier II and requesting that Defendants preserve the video at issue in this case. Attach. 3 to Compl. 1, ECF No. 1-3. A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir.

13

1982).³ Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

At this early juncture the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits. Furthermore, the Defendants have not been served or had a meaningful opportunity to respond to Plaintiff's allegations. Fed. R. Civ. P. 65(a)(1). Defendants should be afforded an opportunity to respond to Plaintiff's allegations, and any claims for injunctive relief can be addressed as this case proceeds. Moreover, to the extent Plaintiff is concerned about the destruction of potentially relevant evidence in this case, the Court has "broad discretion" to impose sanctions for discovery abuse, including but not limited to the "failure to preserve evidence." *See, e.g., Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Because Defendants already have a legal duty to preserve evidence, a preliminary injunction requiring them to do so is unnecessary at this time. Plaintiff's claim for a preliminary injunction or temporary restraining order should therefore be dismissed.

---

³The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

IV.     Conclusion

In accordance with the foregoing, Plaintiff's due process claims against Graham, Morrison, and Beasley and his equal protection claim against Defendant Graham shall proceed for further factual development.  It is **RECOMMENDED** that Plaintiff's remaining claims, including his claims for preliminary injunctive relief, be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Because Plaintiff is not proceeding *in forma pauperis* in this case, and the Court having found that Plaintiff has made colorable constitutional violation claims against Defendants Graham, Morrison, and Beasley, it is **ORDERED** that Plaintiff serve these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are

reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

Plaintiff must secure service upon the Defendants in accordance with the provisions of Fed. R. Civ. P. 4. The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Fed. R. Civ. P. 4. While Plaintiff may request a waiver of service of summons from Defendants in accordance with Fed. R. Civ. P. 4(d), if Defendants do not waive service, Plaintiff must make arrangements with a person authorized to make service under Fed. R. Civ. P. 4(c). In accordance with Fed. R. Civ. P. 4(m), failure to achieve service within 90 days after filing of the Complaint may result in dismissal of this case. If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or institutional equivalent) for the previous six-month period.

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. All Defendants are similarly advised that they are

expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any

time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed

FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 10th day of February, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge